RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 07a0318p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DOUGLAS LINDSAY, SR.; TINA LINDSAY,
  *Plaintiffs-Appellants,*

  *v.*

No. 06-4430

BRENT YATES; JOANN YATES; THE ESTATE OF GENE
YATES; SLUSS REALTY COMPANY; CAROL EICHER,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 05-01625—Ann Aldrich, District Judge.

Argued: July 27, 2007

Decided and Filed: August 15, 2007

Before: KEITH, MOORE, and COLE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Edward L. Gilbert, SLATER, ZURZ & GILBERT, Akron, Ohio, for Appellants. Maura L. Hughes, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, for Appellees. **ON BRIEF:** Edward L. Gilbert, Michael J. Wright, SLATER, ZURZ & GILBERT, Akron, Ohio, for Appellants. Julia A. Harris, Jeffrey J. Lauderdale, CALFEE, HALTER & GRISWOLD, Cleveland, Ohio, James L. Childress, CALHOUN, KADEMENOS & CHILDRESS, Mansfield, Ohio, for Appellees.

---

## OPINION

---

R. GUY COLE, JR., Circuit Judge. Plaintiffs-Appellants Douglas and Tina Lindsay brought suit against Defendants-Appellees JoAnn Yates, the Estate of Gene Yates, and Brent Yates (collectively, the "Yateses"), as well as Sluss Realty Company and realtor Carol Eicher, on the grounds that Defendants terminated a real-estate sales contract with the Lindsays one day after learning that the Lindsays are black. The district court dismissed the Lindsays' complaint, concluding that they failed to plead facts establishing each element of a prima facie case as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Although the district court did not address it, the Yateses argued below, and now argue before this Court, that the Lindsays' complaint must be dismissed for

1

the further reason that they failed to plead facts showing that the purchase agreement executed by the parties was valid and enforceable.

For the reasons described below, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A.    Facts

The Lindsays are an African-American couple who reside in Richland County, Ohio.  They allege that on or about August 8, 2004, Gene and JoAnn Yates contracted with Sluss Realty and Sluss realtor, Carol Eicher, to advertise the Yateses' home in Lexington, Ohio, for sale.  The Yateses' home is located at 2268 Eckert Road, and the Yateses own several adjacent parcels of property, which were not for sale.  In addition, the Yateses' son, Brent, operates a business on one of these adjacent parcels.

Gene Yates died in January 2005, but the Yateses' Eckert Road property remained on the market.  The Lindsays allege that Sluss and Eicher told them that Brent Yates was authorized by his mother to negotiate the sale of the property and execute a purchase agreement.  On May 12, 2005, the Lindsays signed a purchase agreement to buy the property for an agreed price of $175,000.  They tendered the signed purchase agreement to Brent Yates through Eicher and deposited $500 in earnest money with him in the form of a promissory note.  Brent Yates signed the purchase agreement as the seller of the property on May 13, 2005.

On May 23, 2005, the Lindsays visited their soon-to-be new home to identify the property lines.  At that time, they introduced themselves to Brent Yates.  The next day, Sluss and Eicher informed the Lindsays that the Yateses intended to terminate the sales contract because JoAnn Yates wished to keep the house "for sentimental reasons."  The Lindsays appeared for the June 10, 2005 scheduled closing, but the Yateses did not.

### B.    Procedural History

The Lindsays filed suit on June 16, 2005, asserting that Defendants unlawfully refused to sell them the Yateses' property on account of their race.  The Lindsays brought claims for violation of federal and state anti-discrimination laws, including (1) the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3603-3604,[1] (2) 42 U.S.C. § 1981,[2] (3) 42 U.S.C. § 1982,[3] and (4) Ohio Revised Code § 4112.02(H)(1), as well as a common-law claim for breach of contract.

Rather than move to dismiss the Lindsays' complaint under Federal Rule of Civil Procedure 12(b)(6), Defendants answered.  The Yateses answered on August 22, 2005, and Sluss and Eicher answered on August 29, 2005.  The parties then proceeded to discovery.  Nearly a year later, on June

---

[1] 42 U.S.C. § 3604 makes it unlawful to, among other things,  "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin."

[2] 42 U.S.C. § 1981 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ."

[3] 42 U.S.C. § 1982 provides: "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

13, 2006, the Yateses moved for judgment on the pleadings under Rule 12(c)[4] on the grounds that the Lindsays were not entitled to relief on any of their claims because the parties had never entered into a valid sales contract. The Yateses argued that the Lindsays' pleading was deficient because they failed to allege facts showing that the owner of the property, JoAnn Yates, had signed the purchase agreement, or that she had authorized her son, Brent, to sign on her behalf.

The district court granted the Yateses' motion on October 17, 2005, but not on the grounds urged by the Yateses or otherwise briefed by the parties.[5]

First, the district court dismissed the Lindsays' claim under 42 U.S.C. § 3603. The district court reasoned that § 3603 does not constitute an independent cause of action under the FHA, but simply works in conjunction with the prohibitions set forth in § 3604 of the Act. *Lindsay v. Yates*, No. 05-1625, slip op. at 3-4 (N.D. Ohio Oct. 17, 2006) ("Dist. Ct. Op.").

Second, the district court *sua sponte* concluded that the Lindsays failed to plead a prima facie case of racial discrimination because they did not allege facts establishing that the Eckert Road property remained on the market after the Yateses rejected them. *Id.* at 4-6. The district court therefore dismissed all the Lindsays' federal claims, dismissed the Lindsays' state-law claims without prejudice, and stated that its order was final and appealable. *Id.* at 6. The district court never ruled on whether the Lindsays adequately pleaded facts regarding the existence of a valid contract, which was the entire premise of the Yateses' Rule 12(c) motion. The Lindsays timely appealed.

## II. DISCUSSION

### A.     Standard of Review

We review a district court's dismissal of a plaintiff's complaint de novo. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). The same standards apply irrespective of whether the complaint has been dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim or under Rule 12(c) for judgment on the pleadings. *Id.* We construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and decide whether the plaintiffs can prove any set of facts in support of their claims that would entitle them to relief. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005).

### B.     Merits

On appeal, the Lindsays do not challenge the district court's dismissal of their claim under 42 U.S.C. § 3603. Instead, the Lindsays argue that the court erred in dismissing the remainder of their federal claims (which includes their claims asserted under 42 U.S.C. §§ 1981, 1982, and 3604) on the grounds that they failed to plead all the elements of a *McDonnell Douglas/Burdine* prima facie case. The Lindsays further argue, contrary to the Yateses, that they are not required to plead

---

[4]Unlike a Rule 12(b)(6) motion, which must be brought prior to answering the complaint, a Rule 12(c) motion may be brought "[a]fter the pleadings are closed but within such time as not to delay the trial. . . ." Fed. R. Civ. P. 12(c).

[5]The district court couched its order as one granting relief under Rule 12(b)(6). As described above, however, the Yateses elected to answer the complaint, rather than bring a Rule 12(b)(6) motion to dismiss. Almost a year after filing their answer, the Yateses brought a Rule 12(c) motion to dismiss. Thus, the district court should have stated that its ruling was pursuant to Rule 12(c). Because the legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same, the error was harmless.

the existence of a valid sales contract to state a claim for relief. Each of these issues will be discussed in turn.

      1.       *The District Court Erred by Requiring the Lindsays to Plead Facts Establishing a Prima Facie Case Under the* McDonnell Douglas/Burdine *Framework*

The familiar *McDonnell Douglas/Burdine* analysis applies to federal housing-discrimination claims, whether they are brought under the FHA or 42 U.S.C. §§ 1981 or 1982. *Mencer v. Princeton Square Apts.*, 228 F.3d 631 (6th Cir. 2000) (applying the *McDonnell Douglas* burden-shifting framework to claims brought under the FHA and §§ 1981 and 1982); *Selden Apts. v. U.S. Dep't of Housing and Urban Dev.*, 785 F.2d 152, 159 (6th Cir. 1986) (same). First, a plaintiff who alleges discrimination on the basis of race must make out a prima facie case by showing "(1) that he or she is a member of a racial minority, (2) that he or she applied for and was qualified to rent or purchase certain property or housing, (3) that he or she was rejected, and (4) that the housing or rental property remained available thereafter." *Mencer*, 228 F.3d at 634-35. However, the Supreme Court has instructed that "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

If the plaintiff satisfies the prima facie requirements, the burden shifts to the defendant to produce evidence of a legitimate, non-discriminatory reason for rejecting the plaintiff. *Mencer*, 228 F.3d at 634. Finally, the burden shifts back to the plaintiff to show that the defendant's proffered non-discriminatory reason is a pretext. *Id.* "Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion throughout the process." *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

The question on appeal is whether, at the pleading stage, a housing-discrimination plaintiff must establish each of the elements of the prima facie case to survive a motion to dismiss the complaint. As described above, the district court held that the Lindsays' complaint failed to state a claim because they did not plead facts showing that the Eckert Road property remained available to other potential buyers, and that therefore the Lindsays did not satisfy the fourth element of the prima facie case. Both the district court and the parties failed to consider controlling Supreme Court authority that contravenes the district court's judgment.

In *Swierkiewicz*, the Supreme Court unanimously held that a plaintiff who asserted federal employment-discrimination claims was not required to plead facts establishing a prima facie case to state a claim for relief. The Court stated that "[t]he prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement." *Id.* at 510. Thus, the Court held that an employment-discrimination plaintiff satisfies her pleading burden by drafting "a short and plain statement of the claim" consistent with Federal Rule of Civil Procedure 8(a). *Id.* at 508. Provided that the plaintiff "'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" the complaint must be upheld. *Id.* at 512 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although *Swierkiewicz* was an employment-discrimination case, our sister Circuits have expressly extended its holding to housing-discrimination claims. *Meyer v. Bear Rd. Assocs.*, 124 F. App'x 686, 688 (2d Cir. 2005); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061-63 (9th Cir. 2004). Indeed, both the Second and Ninth Circuits have stated that *Swierkiewicz* applies to any claim covered by the *McDonnell Douglas* framework. *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) ("The *Swierkiewicz* holding applies with equal force to any claim . . . that the *McDonnell Douglas* framework covers."); *Edwards*, 356 F.3d at 1062 (stating that the reasoning of *Swierkiewicz* "applies to any claim to which the *McDonnell Douglas* framework is applicable . . ."). We agree.

*Swierkiewicz* was not directed at explaining what an employment-discrimination plaintiff, in particular, does or does not need to plead to survive a motion to dismiss, so much as it was directed to making clear that *McDonnell Douglas* does not set the standard for pleading any complaint. The Supreme Court held, without limiting its comments to employment-discrimination claims, that *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement" and that "the prima facie case relates to the employee's burden of presenting evidence. . . ."[6] *Swierkiewicz*, 534 U.S. at 510.

A fair reading of the Lindsays' complaint shows that they have pleaded claims for which relief may be granted. The Lindsays have alleged the statutory bases for their claims (42 U.S.C. §§ 1981, 1982, and 3604) and have set forth the factual predicate of those claims. They allege that the Yateses advertised their house for sale, that they (the Lindsays) executed a purchase agreement to buy the house, and that nearly two weeks after signing the purchase agreement and depositing $500 in earnest money with Brent Yates—and one day after Brent learned they were black—the Yateses terminated the contract. *Cf. Swierkiewicz*, 534 U.S. at 514 (holding that the plaintiff stated national-origin and age-discrimination claims where he "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination"). Because these allegations are sufficient to apprise the Defendants of the Lindsays' claims and the grounds upon which they rest, the Lindsays have satisfied their pleading burden.[7]

2.      *The Lindsays Are Not Required to Plead Facts Showing That the Purchase Agreement Was Valid and Enforceable to State a Claim for Relief*

The district court did not rule on whether the Lindsays were required to plead the existence of a valid sales contract. "It is the general rule that a federal appellate court does not consider an issue not passed upon below." *United States v. Henry*, 429 F.3d 603, 618 (6th Cir. 2005) (internal quotation marks and ellipses omitted). Here, however, we exercise our discretion to decide the question because "both parties have briefed and argued the issue's merits," *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 523 (7th Cir. 2001) (internal quotation marks and citation omitted), and because a decision will serve the interests of judicial economy, *U.S. v. Koyomejian*, 970 F.2d 536, 541 (9th Cir. 1992) ("Although the district court did not pass on the Fourth

[6]*Swierkiewicz* was discussed extensively by the dissent in the Supreme Court's recent decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007). *Twombly* addressed requirements for pleading an antitrust claim under § 1 of the Sherman Act. The dissent argued that the *Twombly* majority had devised a "new pleading rule" that called into question the continued vitality of *Swierkiewicz*. 127 S. Ct. at 1974 (Stevens, J., dissenting). Because the Supreme Court majority distinguished *Swierkiewicz* and nowhere expressed an intent to overturn it, we have no basis for concluding that *Swierkiewicz* is no longer good law. Moreover, although this case does not present the question of if, or exactly how, *Twombly* has changed the pleading requirements of Federal Rule of Civil Procedure 8(a), we note that in *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197 (2007), decided after *Twombly*, the Supreme Court reaffirmed that Rule 8(a) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 2200 (internal quotation marks omitted) (concluding that the petitioner had stated an Eighth Amendment claim where he alleged that prison officials had endangered his life by removing him from hepatitis C medication shortly after he began a year-long treatment regimen, that he was still in need of the treatment, and that prison officials continued to deny him treatment). In any event, for the reasons described *infra*, we conclude that the Lindsays have pleaded sufficient facts giving rise to a "reasonably founded hope that the discovery process will reveal relevant evidence" to support their claims. *Twombly*, 127 S. Ct. at 1967 (internal quotation marks omitted).

[7]The *McDonnell Douglas/Burdine* framework applies only when discrimination plaintiffs rely on circumstantial evidence to prove their claims. Thus, if, after discovery, the Lindsays are able to present direct evidence of discrimination, there will be no need to evaluate their claims under the *McDonnell Douglas/Burdine* burden-shifting approach. *See, e.g., Talley v. Bravo Pitino Rest.*, 61 F.3d 1241, 1248 (6th Cir. 1995) ("The *McDonnell Douglas* formula is inapplicable . . . to cases in which the Title VII plaintiff presents credible, direct evidence of discriminatory animus.") (citation omitted).

Amendment issue in this case, we address it nonetheless because it is a purely legal issue, and in the interest of judicial economy.").

In their complaint, the Lindsays pleaded that

> Sluss Realty Company and Carol Eicher represented to the Plaintiffs and Plaintiffs' real estate agent, that co-defendant, Brent Yates, had authority to negotiate the sale of the real property and sign the purchase agreement on behalf of his mother, Jo[A]nn Yates, who was at that time out of town.

(Joint Appendix ("JA") 21 (Compl. ¶ 15).)

The Yateses argue that the Lindsays are required to allege that the purchase agreement is valid and enforceable in order to state a claim under federal and state law for housing discrimination. To do so, the Yateses insist that the Lindsays had to plead facts showing that JoAnn Yates authorized Brent to act on her behalf in negotiating and completing the sale. Paragraph 15 of the Lindsays' complaint, set forth above, does just that. But, the Yateses disagree, arguing that it was not enough for the Lindsays to plead that Sluss and Eicher told them that Brent was acting on his mother's behalf in arranging the sale, nor was it enough to attach to the complaint the purchase agreement, showing that Brent held himself out as his mother's agent by negotiating the sale terms and signing the purchase agreement. Instead, the Yateses contend that the Lindsays were required to plead facts showing that JoAnn Yates represented to them that Brent was her authorized agent in the transaction. Absent such an allegation, argue the Yateses, the Lindsays' claims are doomed.

In support of their position, the Yateses cite the recent Supreme Court decision in *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006). The Yateses read *Domino's Pizza* to stand for the expansive proposition that any time plaintiffs bring claims under 42 U.S.C. §§ 1981, 1982 or 3604, they must show that they "would have had enforceable rights as a result of the transaction at issue," "even where unlawful discrimination may have occurred. . . ." (Appellees' Br. 24.) *Domino's Pizza* does not extend nearly that far.

*Domino's Pizza* dealt exclusively with § 1981. The Supreme Court reaffirmed that § 1981 prohibits racial discrimination in both the making and enforcement of contracts. *Domino's Pizza*, 546 U.S. at 476. The Court held that to state a colorable claim under § 1981, a plaintiff must plead that she, rather than someone else, has or would have enforceable rights under the contract:

> Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship.

*Id.* at 476. Applying this rule, the Court held that the plaintiff in *Domino's Pizza* failed to state a claim because he personally did not have any rights under the proposed contracts; rather, it was the corporation, of which the plaintiff was president, that had the contractual rights at issue.

Thus, in holding that a § 1981 plaintiff must plead facts showing that she "has or would have rights under the existing or proposed contractual relationship," the Supreme Court meant only that the plaintiff had to allege that she was an actual party to, or beneficiary of, the contract, not that she had to allege, as the Yateses argue, that the contract itself was valid. *Id.* at 476. The inquiry has nothing to do with the validity or invalidity of the contract, but with whether the plaintiff is seeking to enforce her own rights, "not [] someone else's." *Id.* at 480.

Here, there can be no doubt that the Lindsays are seeking vindication of their own contractual rights. *Domino's Pizza* therefore has no bearing on their claims.

The Yateses also argue that the purchase agreement was not valid and enforceable under Ohio law. Just as *Domino's Pizza* does not stand for the proposition that a housing-discrimination plaintiff must plead the existence of a valid sales contract to state a claim, neither do any of the Ohio cases cited by the Yateses. True, Ohio agency law provides that a principal will not be bound by the acts of an agent made in excess of the agent's authority, *Hairston v. Goodman*, No. 58193, 1991 Ohio App. LEXIS 1176 *16-17 (Ohio Ct. App. Mar. 21, 1991), but even according to the cases cited by the Yateses, questions of agency are evidentiary in nature. *See, e.g., Minnielli v. Davidson*, No. 95-05-090, 1995 Ohio App. LEXIS 4788 (Ohio Ct. App. Oct. 30, 1995); *Hairston*, 1991 Ohio App. LEXIS 1176 at *1; *Ottawa County Comm'rs v. Mitchell*, 478 N.E.2d 1024 (Ohio Ct. App. 1984). Thus, whether JoAnn Yates actually authorized Brent to arrange for the sale of the Eckert Road property, and what the scope of that authority was, are questions of fact that cannot be resolved at the pleading stage, and may even turn on a credibility determination that is unsuitable for summary judgment. Accordingly, we hold that in pleading that Sluss and Eicher told them that Brent was authorized to arrange for the sale; that Brent did, through Sluss and Eicher, negotiate the sale terms and accept the signed purchase agreement and the earnest money; that Brent himself signed the purchase agreement; and that everything proceeded without incident until the sale was canceled one day after Brent learned they were black, the Lindsays have adequately stated a claim for relief.

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.